UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CORY J. ROSEN, an individual,<br><br>       Plaintiff,<br><br> v.<br><br>PEND OREILLE COUNTY, a local government entity, PEND OREILLE COUNTY SHERIFF ALAN BOTZHEIM, an individual, PEND OREILLE COUNTY SHERIFF'S DEPARTMENT, a local government entity, and UNDERSHERIFF GRANT SIREVOG, an individual,<br><br>       Defendants. | NO:  2:15-CV-153-RMP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Summary Judgment, ECF No. 40.  The Court has reviewed the motion and the record and is fully informed.

This case initially was filed in Spokane County Superior Court and removed to this Court under federal question jurisdiction pursuant to 28 U.S.C. § 1331.  *See* ECF No. 1.  Plaintiff brings constitutional claims pursuant to 42 U.S.C § 1983 alleging violations of both procedural due process and substantive due process.  Pl's

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

1  Resp. Mot. Summ. J., ECF No. 68 at 10.  Plaintiff claims that he was not given

2  adequate due process in his termination and, subsequent to his termination, he found

3  it difficult to find employment in law enforcement, allegedly due to Defendants'

4  actions in contacting other agencies.  Pl's Resp. Mot. Summ. J., ECF No. 68 at 7.

5      Plaintiff also alleges violations of various state law claims.  Am. Compl., ECF

6  No. 15.  For the purposes of this summary judgment motion, the Court focuses on

7  the § 1983 claims as they provide the sole basis for this Court's subject matter

8  jurisdiction.

9                              **BACKGROUND**

10     Plaintiff was employed by Pend Oreille County Sheriff's Office from 2006,

11 Yakely Aff. Ex. A, Rosen Dep. 10:6, ECF No 44-1, until his termination on June 27,

12 2013.  Yakely Aff. Ex. A, Rosen Dep. 16:16-16, ECF No 44-1.  Prior to working for

13 Pend Oreille County, Mr. Rosen had worked for a number of other law enforcement

14 agencies, including East Wenatchee Police Department in 2003.  Yakely Aff. Ex. A,

15 Rosen Dep. at 11, ECF No. 44-1.  Mr. Rosen testified that although he did not have

16 any disciplinary actions while working at East Wenatchee and that he had resigned

17 due to marital problems, termination was a possibility.  Yakely Aff. Ex. A, Rosen

18 Dep. 13:16, ECF No. 44-1.

19     Mr. Rosen admitted that he had been placed on administrative leave pending

20 an investigation by the Douglas County Sheriff's Office for what he remembered as

21 being a burglary charge stemming from Mr. Rosen's checking on his wife's fidelity

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 2

while performing a security check of the school where she was working.  Yakely

Aff. Ex. A, Rosen Dep. 13-14, ECF No. 44-1.  Mr. Rosen believed that he was

charged initially with burglary but "accepted a deferred sentence for criminal

trespass second degree."  Yakely Aff. Ex. A, Rosen Dep. 14:21-24, ECF No. 44-1.

Mr. Rosen also admitted that "there were allegations of domestic violence" and that

he was investigated for assault by the Douglas County Sheriff's Department when he

worked in East Wenatchee.  Yakely Aff. Ex. A, Rosen Dep. at 77-78, ECF No. 44-1.

Prior to being terminated by Pend Oreille County, Mr. Rosen had accrued a

number of disciplinary actions including discipline for a negligent discharge of a

shotgun in 2012, Yakely Aff. Ex. Q, at 280, ECF No. 44-3; failing to timely sign a

marijuana policy in 2013, *Id.*; and a written reprimand and suspension regarding

being photographed for an ID, *Id.*; Yakely Aff. Ex. A, Rosen Dep at 103, ECF No.

44-1.  Mr. Rosen testified that he felt that the investigations and discipline against

him were "one-sided" and that he was under scrutiny.  Yakely Aff. Ex. A, Rosen

Dep. at 26-27, ECF No. 44-1.

In 2012, Mr. Rosen, as union shop steward, complained to Sgt. Blakeslee and

Sgt. Youk about caseload inequality.  Yakely Aff. Ex. A, Rosen Dep. at 27, ECF No.

44-1.  Mr. Rosen testified that although Sgt. Youk seemed open to talking to him

about the caseload inequality at first, several days later Sgt. Youk called him into his

office and "berated [him] for bringing up some of the items . . . ." that Mr. Rosen

had raised.  Yakely Aff. Ex A, Rosen Dep. at 28, ECF No. 44-1.  Mr. Rosen stated

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 3

that he did not believe that the disciplinary actions he received were consistent

within Pend Oreille Sheriff's own department.  Yakely Aff. Ex A, Rosen Dep. at 27,

ECF No. 44-1.

On a separate occasion, Sgt. Youk counselled Mr. Rosen regarding the hours

of overtime that Mr. Rosen requested on a time slip for attending a training session.

Youk Aff,. at 3, ECF No. 43.  Although Sgt. Youk informed Mr. Rosen that he

believed one and a half hours of overtime would be the appropriate accounting for

the training day, Mr. Rosen resubmitted his overtime time slip for the original two

hours that Sgt. Youk already had questioned.  *Id.*  When Sgt. Youk had a follow up

meeting with Mr. Rosen on the time slip issue and concerning a case that Mr. Rosen

was working on, the meeting escalated, and Sgt. Youk felt that Mr. Rosen was

insubordinate.  *Id.* at 3-4.  Sgt. Youk was concerned that the encounter with Mr.

Rosen would turn into a physical altercation and reported his concerns to

Undersheriff Sirevog.  *Id.*

Sgt. Youk's accusation of Mr. Rosen's insubordination was investigated by

Sgt. Blakeslee.  *Id.*  At the end of Sgt. Blakeslee's interview with Mr. Rosen, Sgt.

Blakeslee stated that "Mr. Rosen and his representative wanted to roll [sic] play his

actions with Sgt. Youk for me; . . ."  Blakeslee Aff. at 3, ECF No. 42.  Because of

Mr. Rosen's demonstration, Sgt. Blakeslee concluded that Mr. Rosen had been

insubordinate to Sgt. Youk.  *Id.*  Sgt. Blakeslee found evidence to sustain a finding

1  in January 2013 that Mr. Rosen had committed numerous policy violations.  Yakely

2  Aff. Ex. G, ECF No. 44-3.

3       Mr. Rosen was at least familiar with Pend Oreille County's progressive

4  discipline policy.  Yakely Aff. Ex A, Rosen Dep. at 48, ECF No. 44-1.  Mr. Rosen

5  was provided with a *Loudermill* hearing on January 18, 2013.  Yakely Aff. Ex. A,

6  Rosen Dep. at 105, ECF No. 44-1.  Pend Oreille County administrators suspended

7  Mr. Rosen's employment for ten days beginning on February 28, 2013.  Yakely

8  Aff.., Ex. M, ECF No. 44-3 at 265.  Following the *Loudermill* hearing, a "Last

9  Chance Agreement" ("LCA") was signed by Mr. Rosen on February 27, 2013.

10  Yakely Aff., Ex. F, ECF No. 44-2 at 231.

11       After the LCA was signed, another incident in April of 2013 occurred

12  regarding Mr. Rosen's handling of an incident at the jail, which related to an

13  inmate's report that a jail trustee had exposed his genitalia to her.  Yakely Aff. Ex.

14  A, Rosen Dep. at 112-17, ECF No. 44-1.  Mr. Rosen completed his report of other

15  incidents involving the inmate, but did not include the alleged indecent exposure

16  incident in the body of his report.  Yakely Aff. Ex. A, Rosen Dep. at 116, ECF No.

17  44-1.  Mr. Rosen admitted that his not following up on the indecent exposure

18  allegations by the inmate was an "oversight."  Yakely Aff. Ex A, Rosen Dep. at 116,

19  ECF No. 44-1.  Mr. Rosen was investigated for his failure to adequately investigate

20  the allegation of indecent exposure.  Yakely Aff. Ex. C, Sirevog Dep. at 171, ECF

21  No. 44-2.  After he was investigated for his additional misconduct, Plaintiff was

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 5

given another *Loudermill* hearing on June 25, 2013, to answer to the allegation that he violated his LCA. Yakely Aff. Ex. Q, at 279, ECF No. 44-3. Mr. Rosen was terminated on June 27, 2013. Yakely Aff. Ex. Q, at 279, ECF No. 44-3.

Mr. Rosen alleges that after Pend Oreille County terminated him, he has had difficulty finding employment in law enforcement. However, Mr. Rosen testified during his deposition that he had been offered a job with the Spokane Tribe during his last months of working at Pend Oreille County, which he declined in favor of a law enforcement position with the Washington State Department of Corrections. Yakely Aff. Ex A, Rosen Dep. at 17-18, ECF No. 44-1. After being terminated by the Department of Corrections, Plaintiff obtained a law enforcement position in Boardman, Oregon. *Id.* at 9.

## DISCUSSION

The moving party is entitled to summary judgment when there are no disputed issues of material fact when all inferences are resolved in favor of the non-moving party. *Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1467, 1471 (9th Cir. 1994); FED. R. CIV. P. 56(c). If the non-moving party lacks support for an essential element of their claim, the moving party is entitled to judgment as a matter of law regarding that claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). At the summary judgment stage, the Court does not weigh the evidence presented, but instead assumes its validity and determines whether it supports a necessary element of the claim. *Id.*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 6

To prevail at the summary judgment stage, a party must establish that a fact cannot be genuinely disputed and that the adverse party cannot produce admissible evidence to the contrary.  FED. R. CIV. P. 56(c).  Once the moving party has met their burden, the non-moving party must demonstrate that there is probative evidence that would allow a reasonable jury to find in their favor.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986).

Plaintiff's fourth cause of action, which he brings pursuant to 42 U.S.C. § 1983, alleges that he was deprived of his constitutionally-protected rights.  The statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–257 (1978)).

Defendants argue that Plaintiff's federal cause of action is amorphous and vague.  In support of his § 1983 claims, Plaintiff argues that:

> Mr. Rosen's constitutionally protected property interest in his position of employment and his liberty interest in his right to pursue his profession and his right to maintain his good name and reputation were

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 7

violated by Defendants without due process of law, and in violation of the Fourteenth and Fifth Amendments of the United States Constitution.

ECF No. 15 at 16.

In response to Defendants' motion for summary judgment, Plaintiff attempts to clarify the nature of this cause of action, which is broadly based on two related theories. Pl's Resp. Mot. Summ. J., ECF No. 68 at 6. "Rosen alleges deprivation of his property interest in government employment and his liberty interest in pursuing the occupation of his choice. Rosen makes both a substantive due process claim and a procedural due process claim." *Id*. Plaintiff argues both theories in response to Defendants' motion, and the Court must determine whether a genuine issue of material fact exists regarding an essential element of Plaintiff's claims.

**Substantive Due Process**

The due process clause of the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. The Supreme Court has interpreted this provision to bar "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). "The substantive component of the Due Process Clause forbids the government from depriving a person of life, liberty, or property in such a way that . . . interferes with rights implicit in the concept of ordered liberty.".

*Enquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007), *aff'd sub*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8

*nom. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008) (citing *Squaw Valley*, 375 F.3d at 948 (internal quotation marks omitted)).  However, "[t]here is no general liberty interest in being free from capricious government action . . . . The federal judiciary is not a good-government watchdog; the Due Process Clause is not the 'Fairness Clause.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 873-874 (9th Cir. 1998).  By the very terms of the Fourteenth Amendment, a plaintiff must first allege a deprivation of "life, liberty, or property."

Plaintiff argues that his substantive due process rights in liberty and property were violated by "arbitrary government action."  Pl's Resp. Mot. Summ. J., ECF No. 68 at 7.  Plaintiff cites *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985 (9th Cir. 2007), *aff'd sub nom.  Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008), to support his assertion of an "occupational liberty interest protected against arbitrary government action that makes it virtually impossible for him to pursue his occupation."  Pl's Resp. Mot. Summ. J., ECF No. 68 at 7.

The court in *Engquist* clarified the limits of the claim it recognized:

> We decline to hold that there is no substantive due process claim for a public employer's violations of occupational liberty.  Rather, we limit the claim to extreme cases, such as a "government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure."  *Olivieri v. Rodriguez,* 122 F.3d 406, 408 (7th Cir. 1997).  Such a governmental act would threaten the same right as a legislative action that effectively banned a person from a profession, and thus calls for the same level of constitutional protection . . . . such a claim is colorable only in extreme cases.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

478 F.3d at 997–98.  The Ninth Circuit only recognized such a right in extreme circumstances where a government employer takes actions "that foreclose access to a particular profession to the same degree as government regulation."  *Id*.

Plaintiff argues that Defendants have made it "virtually impossible" to obtain employment in law enforcement because they have included stigmatizing information in his file and shared such information with other agencies.  Plaintiff's allegations fall far short of the actions discussed in *Engquist*.  The Court considers that negative information revealed pursuant to reference checks does not bar future employment in the same manner as a government blacklist would.  Plaintiff's own employment history with Pend Oreille County likely would have a negative impact on his ability to find employment considering the information contained in his termination letter regarding his alleged insubordination with Sergeant Youk, his challenged request for overtime, and his failure to include sufficient details in a report and properly investigate a jail incident.  *See* Yakely Aff. Ex. Q, ECF No. 44-3.

In addition, Defendant has not been barred from working in law enforcement.  Plaintiff's claim is based in part on his asserted inability to find work in law enforcement, but he currently is working as a police officer.  The evidence supports that Defendant was offered a position with the Spokane Tribal Police, which he turned down in favor of a position with the Washington State Department of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 10

1    Corrections.  Most importantly, he currently is employed as a police officer in

2    Boardman, Oregon.

3         The evidence supports that Plaintiff has been able to pursue his occupation of

4    choice, which is the "liberty interest" that he alleges he has been deprived.  Because

5    Plaintiff has failed to support an essential element of his claim, that he has been

6    deprived of his ability to work in law enforcement, the Court grants summary

7    judgment in favor of Defendants on Plaintiff's substantive due process claim that is

8    premised on his asserted liberty interest in pursuing the occupation of his choice.

9         Plaintiff also vaguely references a property interest in continued government

10   employment.  *See* Pl's Resp. Mot. Summ. J., ECF No. 68 at 7-9.  Substantive due

11   process protects individuals from arbitrary deprivation of their liberty by

12   government.  *See Lewis,* 523 U.S. at 845.  The Court has "spoken of the cognizable

13   level of executive abuse of power as that which shocks the conscience."  *Id*.  Such

14   conduct can be shown by "conduct intended to injure in some way unjustifiable by

15   any government interest . . . ."  *Id.* at 849.  "Substantive due process is ordinarily

16   reserved for those rights that are 'fundamental.'"  *Brittain v. Hansen*, 451 F.3d 982,

17   990 (9th Cir. 2006)(citing *Washington v. Glucksberg,* 521 U.S. 702, 721-22 (1997)).

18        Plaintiff seemingly is arguing that his substantive due process rights were

19   violated because Defendants took actions that he believes "are patently arbitrary

20   because they violate POCSO's [Pend Oreille County Sheriff's Office's] own policies

21   and the CBA [Collective Bargaining Agreement] and that they exhibited a pattern of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 11

retaliation."  Pl's Resp. Mot. Summ. J., ECF No. 68 at at 8.  He alleges that Defendants conducted biased investigations and approved of biased reports before terminating him without just cause and without "disclosing material exculpatory information."  *Id*. at 9.

Assuming *arguendo* that Plaintiff articulated a Constitutionally-protected liberty interest, the Court has reviewed Plaintiff's allegations regarding Defendants' actions to determine whether or not Defendants acted arbitrarily.  To determine whether or not Defendants acted arbitrarily, the Court has considered the undisputed facts in the record in the light most favorable to the non-moving party and concludes that the following accurately reflects Plaintiff's employment history in law enforcement[1]:

1.  Plaintiff worked for the East Wenatchee Police Department from January 2003 to April of 2005, when he "resigned for personal reasons."  Plaintiff concedes that he "believed termination was a possibility."  ECF Nos. 21 at 2 and 68 at 2.

2.  While employed at the East Wenatchee Police Department, Plaintiff searched his wife's computer at the school where his wife worked, using keys that he had obtained through the police department.  ECF No. 41 at 2.  In a subsequent employment application, Plaintiff explained that he "[e]ntered my wife's office

---

[1] This same set of facts is relevant to Plaintiff's procedural due process claim and will be referenced below.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 12

while on duty seeking proof of an unfaithful wife." ECF No. 71-4 at 8. Plaintiff was criminally charged with "trespass second degree." Yakely Aff. Ex A, Rosen Dep. at 14:18-23, ECF No. 44-1.

3. In 2004, Plaintiff was investigated for an allegation of domestic violence. Yakely Aff. Ex. D at 28, ECF No. 71-4. The Court notes that Plaintiff has provided contradicting statements regarding what happened in that domestic dispute. In an application for employment, Plaintiff stated that he was having a dispute with his wife, that she went to leave, and he shut the door as he allegedly "planned on trying to "deasculate [sic] a heated arguement [sic] but when the door shut my wife entered the doorway. The door struck my wife. She received eight stitches to her left forehead due to my negligence." Leland Decl., June 21, 2016, Ex. D, at 29, ECF No. 71-4. In Plaintiff's statement of facts in this case, Plaintiff tells the Court that he actually fell down some stairs, which apparently caused the door to close on his wife's face. ECF No. 69 at 5.

4. In 2005, Plaintiff "[c]onfronted and punched a person who was inappropriately involved with [his] wife while [they] were married." Leland Decl., June 21, 2016, Ex. D, at 29, ECF No. 71-4.

5. Plaintiff was given a memorandum of counseling for having been in four collisions with his patrol vehicle, three of which were determined to have been his fault. Simington Decl. Ex. A at 19, ECF No. 78-1.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 13

6.  Plaintiff unintentionally discharged his duty rifle in his patrol vehicle.  ECF Nos. 41 at 3 and 69 at 8.  Plaintiff objected to the fact that he was forced to submit a urine sample after he accidentally fired his gun because he argued that his employer lacked a reasonable basis to believe that he was affected by alcohol while on duty. Rosen Decl. ¶ 10, ECF No. 28.

7.  Plaintiff did not have his picture taken for an identification card by the deadline.  Yakely Aff. Ex. Q, at 280, ECF No. 44-3.  Plaintiff argues that he didn't know about the deadline, others had missed the deadline, he thought he was told to do it by January 18, 2013, and that he had his picture taken on that day.  ECF No. 27 at 12-13.

8.  Plaintiff did not sign the POCSO Marijuana Policy by the proper deadline. Yakely Aff. Ex. Q, at 280, ECF No. 44-3.  In an attempt to mitigate this error, Plaintiff argues that others had missed the deadline, Leland Decl., May 31, 2016, Ex. K, at 360, ECF No. 37-12, and that a day after the deadline, he was placed on administrative leave with limited access to the office and no access to his work email, ECF No. 27 at 14.

9.  Plaintiff had a dispute with his supervisor, Sgt. Youk, regarding Plaintiff's documentation of overtime and regarding one of Plaintiff's written case reports that was missing requisite information.  Mr. Rosen had not included information in a report that he had submitted, was told to add that information, and he responded that although he didn't think the changes were necessary based upon a previous

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14

conversation with Sgt. Youk, he made the requested change.  ECF No. 27 at 7-8.

Plaintiff then told Sgt. Youk that he thought he had included the information

originally, but that "equipment failure" may have caused the information not to have

been saved in the report.  *Id.*

During the same conversation, Plaintiff re-submitted a request for two hours

of overtime-pay despite having worked less than that because he asserts that the

CBA entitled him to that amount and that he could grieve the issue if he was not

granted the overtime.  Rosen Decl. ¶14, ECF No. 28.  Sgt. Youk informed Mr.

Rosen that he would need to speak with his supervisor before approving the request,

and Mr. Rosen responded "You go talk to the Undersheriff and get back to me."  *Id.*

at 497-498.  Mr. Rosen conceded that his tone may have been condescending.  *Id.* at

9.

10.  After the confrontation with Sgt. Youk, an internal investigation ensued

and the investigating sergeant, Sgt. Blakeslee, found evidence to sustain a finding

that Mr. Rosen had committed numerous policy violations.  Yakely Aff. Ex. G, at

233-49, ECF No. 44-3.

11.  Plaintiff was provided with a *Loudermill* hearing on January 18, 2013, to

allow him to respond to alleged violations.  Rosen Decl. at ¶ 16, ECF No. 28.

12.  Rather than terminating his employment after finding numerous

violations and providing him with a hearing, Plaintiff was given three disciplinary

documents and a Last Chance Employment Agreement (LCA).  Leland Decl, Ex. A; Sirevog Dep. Exs. 27-29; ECF No. 27 at 14.

The LCA gave Plaintiff a chance to remain employed, but notified him that upon a sustained finding against him on charges of "untruthfulness, insubordination, performance of basic duties, neglect of duty, prompt response to orders, conflict between members, courtesy, unbecoming conduct, and disrespectful behavior toward a superior," subject to just cause and after giving him an opportunity to respond, he could be immediately terminated.  Yakely Aff. Ex. F, at 230-231, ECF No. 44-2.

13.  On April 26, 2013, Plaintiff was assigned to investigate a report of a number of female inmates who allegedly had been involved with drugs, alcohol, and other contraband in the jail.  Leland Decl., May 31, 2016, Ex. E, at 264, ECF No. 37-5.  During that investigation, a female inmate reported to Plaintiff that a male inmate had exposed himself to her.  Plaintiff does not provide details in his statement of facts, but Defendants have clarified that the description was a detailed report of a male trustee exposing himself to the female inmate, masturbating in front of her into a glove and offering it to her while she was in the cell.  Yakely Aff. Ex. Q, at 280, ECF No. 44-3.

Plaintiff alleges that he spoke with jail staff, was told the story was unlikely, and how Plaintiff asked the staff to review video footage and follow up with him, and how Plaintiff "also reported he had understood the Jail would address the report

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 16

of lewd conduct in the jail."    Leland Decl., Ex. A; Dep. of Sirevog, Ex. 34 at 380; ECF No. 27 at 21.  Plaintiff included the recording of his interview and the inmate's written statement with his report and states that he later followed up on the incident when he was asked to do so.  Furthermore, he also alleges that Defendants were aware of the incident or could have been aware through other channels of information, but they did not ask him to include the incident in his report.  ECF No. 27 at 21.

Viewing Plaintiff's version of the facts in the light most favorable to Plaintiff for the purposes of this summary judgment motion, and fully recognizing that the indecent exposure incident may not have happened as it was reported, that others were aware of it, and that Plaintiff had intended to follow up on the investigation that he apparently started, Mr. Rosen still concedes that he "had forgotten to include an allegation of indecent exposure in the body of [his] report of [his] investigation of contraband in the Pend Oreille County Jail . . . .  Rosen Decl. ¶ 23, ECF No. 28 at 6. Defendants found that if he investigated, he did so inadequately, and he failed to include an important detail in his report.  Yakely Aff. Ex. Q, at 280, ECF No. 44-3.

14.  Yet another internal investigation ensued and Sgt. Blakeslee was assigned to investigate Mr. Rosen's alleged violation of policy regarding the jail incident. Sgt. Blakeslee provided Plaintiff with a three-page Internal Investigation Notification on May 16, 2013, which notified him of the alleged violations and that Sgt. Blakeslee had scheduled an interview with Plaintiff for the following day, May

17, 2013.  Leland Decl., Ex. E; Blakeslee Dep., Ex. 72 at 13384;  ECF No. 27 at 24.

Plaintiff had scheduled a vacation day for May 17, 2013, and asserts that Defendant

Sirevog had told him that Sgt. Blakeslee would call him to schedule an interview so

he did not look for the date of his interview in the three-page Notification.  When

asked why he did not appear for the interview, Plaintiff explained that he was on

vacation "and had not yet read in detail the Notification he had received the previous

day . . . ."  Rosen Decl. ¶ 27; Leland Decl. Ex. E; Blakeslee Dep. Ex. 72 at 13342-

43; ECF No. 27 at 25.  Therefore, when Plaintiff was being investigated for policy

violations and was given a Notification that was only three pages in length that

notified him of when he would be interviewed, he neglected to "read in detail" and

missed his interview.  Sgt. Blakeslee had to reschedule another time to meet with

Plaintiff and his union representative.

15.  After Plaintiff was investigated for violating his LCA, Plaintiff was given

another *Loudermill* hearing on June 25, 2013.  Yakely Aff. Ex. Q, at 279, ECF No.

44-3.

16.  On June 27, 2013, in consideration of Plaintiff's long history of violations

and most importantly, of his breaching the LCA, Defendants served Rosen with a

letter of termination effective that day.  Yakely Aff. Ex. Q, ECF No. 44-3.

17.  Plaintiff appealed the LCA to the Civil Service Commission, which held

that the LCA was invalid and questioned the validity of Plaintiff's discipline and

termination.  *See* ECF No. 28-6.  That decision was reversed by the Pend Oreille

County Superior Court on January 2, 2014.  *See* ECF No. 44-3 at 52-58.  The state court recognized that "[a]ccording to the record before the Commission, Mr. Rosen had admitted to failing to report, document, or investigate the complaint of indecent exposure by the female inmate during the *Loudermill* hearing."  *Id.* at 54.

Mr. Rosen has conceded sufficient facts to find just cause to terminate his employment including being condescending to his supervisor after having been found to have violated policies, Rosen Decl. at 4, ECF No. 28, and failing to include an allegation of a criminal incident in a report, Rosen Decl. ¶ 23, ECF No. 28.  In light of all of the foregoing facts, Mr. Rosen has failed to raise a genuine issue of material fact as to whether Defendants acted arbitrarily in investigating Plaintiff's numerous violations and eventually terminating his employment.

Furthermore, the Court finds no genuine issue of material fact concerning whether his substantive due process rights were violated when Defendants terminated Mr. Rosen or reported incidents including that he had been in numerous collisions with his service vehicle; had accidentally fired his service rifle; had been investigated for trespass, a domestic violence incident, and an assault; had been insubordinate to a supervisor; had missed deadlines; had failed to closely read a Notice regarding an internal investigation; and had failed to adequately document an alleged victim's statement.

/ / /

/ / /

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 19

**Procedural Due Process**

Mr. Rosen also makes a procedural due process claim. "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

> As early as 1972, in *Board of Regents v. Roth,* 408 U.S. 564, 573 [] (1972), the United States Supreme Court established that a terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed. Failure to provide a "name-clearing" hearing in such a circumstance is a violation of the Fourteenth Amendment's due process clause.

*Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004).

To satisfy the requirements of due process, a government employer must only provide

> notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. *See* Friendly, "Some Kind of Hearing," 123 U.Pᴀ.L.Rᴇᴠ. 1267, 1281 (1975). The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. *See Arnett v. Kennedy*, 416 U.S., at 170–171 [] (opinion of POWELL, J.); *id.*, at 195–196, 94 [] (opinion of WHITE, J.); see also *Goss v. Lopez*, 419 U.S., at 581 []. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  An analysis of the adequacy of the process afforded a terminated employee considers competing interests: "[t]hese are the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." *Loudermill*, 470 U.S. at 542–43 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)).

Plaintiff argues that he "received no meaningful opportunity to be heard prior to his termination and the placement of the Termination Letter in his file."  Pl's Resp. to Summ. Jt, ECF No. 68 at 10.  Defendants dispute whether Plaintiff is entitled to a name-clearing hearing, but the Court need not address this argument because of the significant procedural protections that were afforded Plaintiff.

As outlined above, Plaintiff repeatedly was given notices and memoranda,[2] given opportunities to tell his side of the stories surrounding his various mistakes

---

[2] As only a few examples, Plaintiff was provided with a Last Chance Agreement, Yakely Aff. Ex. F., ECF No. 44-2, a Notice of Administrative Leave With Pay from December 6, 2012, Yakely Aff. Ex. I, ECF No. 44-3, an Amended Notice of Administrative Leave With Pay from January 31, 2013, Yakely Aff. Ex. K, ECF No. 44-3; an Oral Counseling Memorandum dated February 22, 2013, Yakely Aff. Ex. L, ECF No. 44-3, a Notice of Suspension dated February 22, 2013, Yakely

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 21

during interviews, and most importantly, he received two *Loudermill* hearings prior
to being terminated: one in January of 2013 and one in June of 2013.

Plaintiff argues that the January *Loudermill* was not effective for the June
termination.  This argument misses the point in a number of respects.  Most
importantly, Plaintiff seems to ignore that he was provided with a *Loudermill*
hearing in June of 2013, right before he was terminated; therefore, he was able to
answer the allegations that finally resulted in his termination.  He was adequately
notified of the basis for his termination after his incident with Sgt. Youk, when he
was provided the Last Chance Agreement, Yakely Decl. Ex. F at 230, ECF No. 44-3,
given a "Notice of Administrative Leave with Pay" regarding "Performance of Basic
Deputies [sic] and Neglect of Duty," Yakely Decl. Ex. O at 274, ECF No. 44-3, was
interviewed by Sgt. Blakeslee, and could tell his side of the story in two separate
*Loudermill* hearings.

Plaintiff raises without support the issue of whether he received a hearing
before a neutral decision-maker because of Sirevog's role in the department.
However,considering the numerous opportunities that Mr. Rosen was provided to
grieve his disciplinary actions with various decion makers, including through the
union grievance process, through the appeal to the Civil Service Commission, and

---

Aff. Ex. M, ECF No. 44-3, and another Notice of Administrative Leave With Pay
dated May 15, 2013, Yakely Aff. Ex. O., ECF No. 44-3.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 22

through a law suit in Superior Court, the Court finds that Plaintiff was afforded

adequate due process with neutral decision makers.

Defendants likely could have comported with due process had they terminated

Plaintiff in January of 2013 when they provided him a hearing after a string of

violations.  Instead they kept him on the force, provided him with discipline, and

gave him a LCA. Defendants investigated and provided another hearing regarding

termination when he violated the terms of the LCA.

The fact that Mr. Rosen still disagrees with what Defendants found is

immaterial as he already was provided an opportunity to dispute those assertions.

The termination letter entered after his final *Loudermill* hearing memorialized the

findings that he disputed.  Plaintiff may take issue with Defendants' comparisons

and statements that he finds stigmatizing, but such complaints fail to create a

genuine issue of material fact regarding whether Mr. Rosen was provided

constitutionally adequate due process.[3]  Plaintiff's desire to have known additional

details pertaining to when his supervisors knew of the indecent exposure in the jail,

---

[3] Plaintiff also briefly references that he believes that Defendants violated his

rights in other related ways, for example, by including unfounded citizen

complaints in his disciplinary file.  Pl's Resp. Mt. Summ. J., ECF No. 69 at 7-8.

However, this alleged violation of POCSO policy is insufficient to support

Plaintiff's constitutional claims.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 23

or to have (allegedly) mitigating information included in reports, are untethered to any constitutional basis.

In consideration of the foregoing, the Court finds that Plaintiff lacks evidentiary support to claim that he was deprived of life, liberty or property without due process of law.  Therefore, the Court grants summary judgment on his 42 U.S.C. § 1983 claims, which is the only basis for this Court's jurisdiction.

Having considered the circumstances of this case in regards to the only federal claim giving rise to federal jurisdiction and noting that the remaining claims arise from state law, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c).  The state court where this action originally was filed is better situated to hear the state law claims in this case now that the only federal cause of action has been dismissed.[4]

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, **ECF No. 40**, is **GRANTED in PART and DENIED in PART**.

---

[4] Plaintiff also alleges that the county Defendants have failed to perform certain actions, like ensuring that personnel files were properly maintained.  However, Plaintiff fails to develop how any of his constitutional rights were violated by such actions.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 24

2. Judgment shall be entered for all Defendants on Plaintiff's claims arising under 42 U.S.C. § 1983, only.

3. Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE AND ARE HEREBY REMANDED TO THE SPOKANE COUNTY SUPERIOR COURT**.

4. All pending motions are **DENIED AS MOOT**.

The District Court Clerk is directed to enter this Order, enter Judgment accordingly, provide copies to counsel and **close this case**.

**DATED** this 11th day of October 2016.


    _s/ Rosanna Malouf Peterson_
    ROSANNA MALOUF PETERSON
    United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 25